UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JECENIA TORRES,  )<br>  )<br>            Plaintiff,  )<br>  )<br>v.  )<br>  )<br>  )<br>KILOLO KIJAKAZI, Acting Commissioner of  )<br>Social Security  )<br>  )<br>  )<br>            Defendant.  )<br>  ) | Civil Action No. 21-18424 (JXN)<br><br>OPINION |

**NEALS, District Judge**

This matter comes before the Court on Plaintiff Jecenia Torres's ("Plaintiff") appeal of the Social Security Commissioner's ("Commissioner") final decision that found Plaintiff was not disabled under the Social Security Act (ECF No. 1). The Court exercises jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) and, having considered the parties' submissions and with oral argument, **AFFIRMS** the Commissioner's decision.

**I.     BACKGROUND AND PROCEDURAL HISTORY**[1]

On September 11, 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income pursuant to Title II and Title XVI of the Social Security Act, respectively. (T201). Plaintiff alleged disability beginning on December 9, 2016 (T201). On November 13, 2017, and December 28, 2017, the claims were denied at the administrative levels (T201). Thereafter, Plaintiff filed a timely request for a hearing that was held on May 8, 2019, where Plaintiff appeared and testified (T102-127). On June 28, 2019, Administrative Law Judge

---

[1] The Court adopts the Procedural History as set out in Petitioner's Brief in Support (ECF No. 14 at 1-2.), which in turn cites to the Transcript provided by the Commissioner (ECF 6-2).

1

Peter R. Lee (the "ALJ") issued a decision denying Plaintiff's benefits claim (T198-220). On August 22, 2019, Plaintiff filed a request to review that decision with the Appeals Council (T540-543). On May 26, 2020, the Appeals Council remanded the matter back to the ALJ for a new decision (T221-227).

On October 5, 2020, a second hearing was held (T78-101). On February 23, 2021, the ALJ issued another unfavorable decision that denied Plaintiff's benefits claim (T10-52). In that decision, made certain findings relevant to this appeal.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021 (T16; Finding 1). The ALJ further found that Plaintiff had not engaged in substantial gainful activity since December 9, 2016, the alleged onset date of disability. (T16; Finding 2). The ALJ also found that Plaintiff suffered from severe medical impairments of "depressive disorder, anxiety (panic disorder), degenerative disc disease with lumbar radiculitis, breast cancer (status post), thyroid cancer (status post), corrective foot surgery (status post), and hypothyroidism." (T16; Finding 3). Additionally, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (T18; Finding 4).

The ALJ assessed the following Residual Function Capacity (the "RFC"):

> …to perform light work…except…can never climb ropes, ladders, or scaffolds. She can never be exposed to unprotected heights or machinery. The claimant can occasionally kneel, stoop, and crouch. The claimant can engage in frequent reaching, fingering, and handling. The claimant can frequently balance. She can perform work that allows for no more than occasional contact with supervisors, co-workers, and the public. The claimant is able to do only simple and routine tasks. (T21; Finding 5).

The ALJ found Plaintiff met her burden of proving that she could not perform her past relevant work (T42; Finding 6). The ALJ found that given Plaintiff's age, education level, and assessed

2

RFC, jobs existed in significant numbers in the national economy of which Plaintiff could perform (T42-43; Findings 7-10). Accordingly, the ALJ determined that Plaintiff was not disabled (T43; Finding 11). On March 12, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council (T577-579). On August 13, 2021, the Appeals Council denied Plaintiff's request, and this litigation followed (T1-6).

## II.   STATEMENT OF RELEVANT FACTS[2]

Plaintiff was forty-eight years old on the date of the ALJ's decision and, thus, is considered a younger person whose age would generally not seriously affect her ability to adjust to other work (Tr. 42, 44); 20 C.F.R. §§ 404.1563, 416.963. Plaintiff has a limited education, and past relevant work experience as a dispatcher clerk (semi-skilled, sedentary work) and accounting clerk (skilled, sedentary work). (Tr. 42). Plaintiff testified that she stopped working in December 2016 as a dispatcher due to physical complaints (thyroid issues) unrelated to the mental complaints raised in this appeal (Tr. 84, 86, 110). When asked why she felt she could not return to work after that, Plaintiff's initial response was that "I started getting problems in my back and legs" (Tr. 87). She later testified that her anxiety and panic attacks "got worse" and that she gets them "like, every day" (Tr. 91).

### A.   The Relevant Medical Evidence[3]

Treatment notes from Plaintiff's primary care provider dated July 31, 2017, reflect that

---

[2] The Court adopts the Statement of Relevant Facts as set out in Defendant's Brief in Opposition (ECF No. 16 at 5-10), which in turn cites to the Transcript provided by the Commissioner (ECF 6-2).

[3] Defendant contends that Plaintiff's two arguments before this Court revolve entirely around the ALJ's consideration of her mental complaints, and the state agency findings regarding her mental complaints and accordingly, all other issues have been waived and were not addressed by the Commissioner. *See Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 84 (3d Cir. 1999) (holding that a party waives any issue not raised in its opening brief); *Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.*, 44 F.3d 1194, 1203-04 (3d Cir. 1995) (upholding district court's finding that a party had waived an issue when the summary judgment memorandum at the district court level made only vague references to the issue). The Court agrees.

3

Plaintiff was originally diagnosed with anxiety disorder one to two weeks earlier (Tr. 623). On psychiatric examination held on that date, Plaintiff was alert and oriented x3, with appropriate affect and demeanor (Tr. 624). Plaintiff was prescribed Lexapro for her anxiety complaints (Tr. 625).

On October 26, 2017, Edward J. Linehan, Ph.D., performed a mental status examination of Plaintiff (Tr. 712). Plaintiff stated that she stopped working due to thyroid cancer, problems with her leg, and undergoing a hysterectomy in May 2017 (Tr. 712). She also stated that due to these issues, she became very depressed (Tr. 713). Plaintiff reported that she has never been psychiatrically hospitalized (Tr. 713). Her symptoms include sadness and tearfulness daily, memory and concentration problems, and sleep disturbance (for both falling and staying asleep) (Tr. 713). She does not have anger issues (Tr. 713).

Plaintiff's daily activities include getting up at about 6:00 a.m.; waking up her eleven-year-old son, getting him ready for school, and taking him to school; watching television; "think[ing] a lot" during the day; picking up her son from school; talking with him about school and helping him do his homework; and getting him ready for bed (Tr. 713-14). She can cook independently and do her laundry (Tr. 713-14).

Psychologist Linehan stated that Plaintiff appeared to be functioning within the very low borderline range on a brief test of cognitive abilities (Tr. 714). Psychologist Linehan diagnosed major depression and panic disorder without agoraphobia, as well as setting forth physical diagnoses (Tr. 714). Psychologist Linehan concluded that "[t]he impairment in functioning should probably be considered based on major depression, panic disorder without agoraphobia; thyroid cancer with surgery and radiation; hysterectomy; GERD and reflux disease, and chronic pain in her left leg, all leading to joblessness. All funds, should she be awarded them should probably be

handed by a responsible adult in her life" (Tr. 714).

On November 1, 2017, Plaintiff presented to her primary care physician, at which time she was negative for anxiety and depression (Tr. 721).

On December 1, 2017, Plaintiff saw Jaspreet Uppal, M.D., for an initial psychiatric evaluation (Tr. 744). Plaintiff reported recurring panic attacks "over the last several months," occurring daily (Tr. 744). Plaintiff reported numerous social stressors, including living with her ex-boyfriend and son, and feeling pressure to move out, as well as not having a source of income (Tr. 744). Dr. Uppal diagnosed panic disorder without agoraphobia (Tr. 744).

On December 13, 2017, Plaintiff was seen in follow-up for her thyroid cancer, at which time she was found on psychiatric examination to be "[a]n emotionally stable and cheerful person with no mood and affect disorders" (Tr. 747). On September 14, 2018, Dr. Uppal completed a mental capacity assessment questionnaire on Plaintiff's behalf, concluding that due to anxiety and depression, Plaintiff had "marked" (i.e., serious) limitations in many mental work-related areas (Tr. 752-56).

Plaintiff returned to Dr. Uppal on December 4, 2018, at which time she reported continued anxiety with panic attacks and difficulty concentrating (Tr. 896). Plaintiff reported that her symptoms were exacerbated by stressors at home, particularly with her husband (Tr. 895). Plaintiff noted that she was awaiting a disability decision (Tr. 896). Dr. Uppal diagnosed Plaintiff with panic disorder (episodic paroxysmal anxiety), without agoraphobia, and prescribed Lorazepam as well as medication for sleep (Tr. 896).

On January 7, 2019, Plaintiff was examined by Decca Mohammed, M.D., for a pre-operative evaluation, at which time her mood and affect were normal, and she was active and alert (Tr. 910, 912).

On January 8, 2019, Plaintiff returned to Dr. Uppal, at which time she reported continued anxiety with depression, exacerbated by discord with her husband's daughter who was living with them (Tr. 900). Dr. Uppal diagnosed Plaintiff with generalized anxiety disorder, and major depressive disorder (recurrent, moderate) (Tr. 900).

At a follow-up examination with Dr. Mohammed on January 28, 2019, Plaintiff again had a normal mood and affect, and was active and alert (Tr. 910).

On March 14, 2019, Plaintiff reported to Dr, Uppal that her anxiety and depression were exacerbated by her physical conditions and having no significant support around the home, as well as discord with her husband (Tr. 898). Dr. Uppal diagnosed Plaintiff with generalized anxiety disorder, panic disorder (episodic paroxysmal anxiety) without agoraphobia, major depressive disorder (recurrent, severe without psychotic features), and insomnia due to other mental disorder (Tr. 899).

Plaintiff submitted treatment notes from her primary care provider, Juan Carlos Herrera, M.D., showing numerous appointments between January 2018 and February 2019 (Tr. 1087-1109). Throughout this treatment period, Plaintiff reported no anxiety, depression, insomnia, tearfulness, or panic attacks, and her psychiatric examinations revealed that she was "Alert. Oriented to person, place and time. Dr. Herrera noted Plaintiff to behave socially appropriate, that there was no evidence of psychomotor disturbance, and that her mood was appropriate to interview. Further, that Plaintiff appeared flexible and her mood congruent. Moreover, that her thought processes and content are socially and culturally appropriate, her judgment and insight are intact, impulsivity is within social norms, and her immediate, intermediate, and long-term memory appeared intact (Tr. 1087-1109).

In August 2019, Plaintiff was evaluated at Cancer Treatment Centers of America for

depression secondary to breast cancer (Tr. 1548). By October 2019, Plaintiff was doing a little better, but was still struggling with anxiety which sometimes awakened her from sleep (Tr. 1571). Plaintiff submitted progress note check-off forms from Access Psychiatric and Behavioral Services for the period between April 2020 and September 2020, which indicated treatment for Plaintiff's complaints of anxiety, depression, and panic disorder (Tr. 1604-12).

### B.      The State Agency's Findings

In November 2017, Jessy Sadovnik, Psy.D., a state agency psychologist, reviewed Plaintiff's claim for benefits in (including Psychologist Linehan's findings), and found that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Based on these findings, Dr. Sadovnik concluded that Plaintiff had the mental residual functional capacity to perform "simple and repetitive tasks and to meet the basic mental demands of work on a sustained basis" (Tr. 137-42).

In December 2017, David L. Biscardi, Ph.D., a second state agency psychologist, reviewed Plaintiff's claim for benefits (including Psychologist Linehan's findings), and found that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Dr. Biscardi concluded that Plaintiff had the "mental residual functional capacity to understand, remember, carry out, and sustain performance of 1-2 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact briefly/superficially with coworkers/supervisors with no public contact, and adapt to changes/stressors associated with simple routine competitive work activities" (Tr. 173-77).

### C. The Vocational Expert's Testimony

The vocational expert testified at the supplemental hearing that Plaintiff had past relevant work as a dispatcher (semi-skilled, sedentary work); and as an accounting clerk (skilled, sedentary work) (Tr. 97).

The ALJ asked the vocational expert to assume an individual of Plaintiff's age, education, and work experience, who was restricted to light work with the following additional limitations: never climb ropes, ladders, or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally stoop and crouch; frequently reach, finger, and handle; frequently balance; occasionally have contact with supervisors, co-workers, and the public; and perform only simple and routine asks (Tr. 97). The vocational expert testified that, with those limitations, Plaintiff was unable to perform her past relevant work, but could nevertheless perform the representative unskilled, light occupations of mail clerk, electronics worker, and assembler (Tr. 98).

## III. STANDARD OF REVIEW

### A. Substantial Evidence Review

When reviewing a final decision of an ALJ regarding disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Plummer v. Apfel,* 186 F.3d 422, 427 (3d. Cir. 1999). "Substantial evidence" means "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate . . . ." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the "correct legal standards. *Friedberg v. Schweiker,* 721 F.2d 445, 447 (3d. Cir. 1983) (citation and internal quotations omitted). The Court's "review of legal

issues is plenary." *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's alleged disability status for purposes of social security benefits, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v).

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Otherwise, the ALJ moves to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment that meets" certain regulatory requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" §§ 404.1520(c), 416.920(c). If the claimant lacks an impairment, he is not disabled. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has a severe impairment, the ALJ moves to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.,* 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's RFC and whether he can perform his "past relevant work." §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." §§ 404.1545(a)(1), 416.945(a)(1). If the claimant cannot

perform his past relevant work despite his limitation, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience[.]" §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions post by the ALJ to [a] vocational expert." *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984). If the claimant "cannot make an adjustment to other work," he is disabled. 20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v).

This Court reviews the Commissioner's final decision to assess only whether the decision rests on proper legal standards and is supported by "substantial evidence." 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). In applying the deferential substantial evidence standard of review, the court does not "weigh the evidence or substitute [its] conclusions for those of the fact-finder[.]" *Rutherford*, 399 F.3d at 552 (citation and internal quotations and brackets omitted). "[E]ven if [the court] would have decided the" case "differently[,]" it defers to the Commissioner and affirms the findings and decision so long as substantial evidence supports it. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted). The standard for substantial "evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is only "more than a mere scintilla." *Id.* (citations and internal quotation omitted). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and internal quotation omitted). Indeed, "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Id.* at 1157 (citation omitted).

Here, the questions before the Court are whether substantial evidence supports the Commissioner's finding that Plaintiff is not disabled and that the ALJ applied correct legal standards.

10

B. **The ALJ's Decision Denying Torres Benefits**

The ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period (Tr. 16, Finding No. 2). The ALJ also found that Plaintiff had "severe" impairments consisting of depressive disorder, anxiety (panic disorder), degenerative disc disease with lumbar radiculitis, breast cancer (status post), thyroid cancer (status post), corrective foot surgery (status post), and hypothyroidism (Tr. 16, Finding No. 3). The ALJ further found that Plaintiff's impairments did not meet or medically equal the criteria of any impairment in the Listings, 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 18, Finding No. 4). The ALJ subsequently determined that Plaintiff retained the residual functional capacity to perform a limited range of simple, routine, light work (Tr. 21, Finding No. 5).

IV. **DISCUSSION**

Plaintiff has advanced the following issues as the basis for this action: 1) Whether the ALJ's decision that Plaintiff is not disabled is based upon substantial evidence when the ALJ failed to include all of Plaintiff's impairments in his RFC assessment and questioning of the vocational expert; and 2) Whether the ALJ's decision applied correct legal standards in evaluating the medical opinions of state agency psychologists Dr. Jessy Sadovnik and Dr. David Biscardi. (Pltf. Supp. Brf. (ECF No. 14) at 4). The Court will address each in turn.

A. **The ALJ's Decision Was Based on Substantial Evidence Despite Not Including All of Plaintiff's Impairments in His RFC Assessment and Questioning by Vocational Expert**

Plaintiff asserts that the ALJ's decision is legally deficient because the RFC assessment and questioning of the vocational expert failed to include Plaintiff's limitations in concentration, persistence, and pace, adapting and managing oneself, and interacting with others (*Id.* at 16).

11

The ALJ found that Plaintiff had moderate limitations in her ability to concentrate, persistent, and maintain pace:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. When the claimant completed a function report, she reported that her impairments affect her ability to concentrate. At the hearing, the claimant testified that she feels depressed and experiences anxiety attacks several times each week. A review of the medical evidence of record confirmed a history of depressive disorder and anxiety disorder. However, mental status examinations of the claimant revealed that she was alert, oriented, and had attention or concentration within normal limits. (T20) (citations omitted).

Plaintiff contends that "[t]he ALJ's discussion fails to provide a meaningful explanation for limiting Plaintiff to 'simple and routine tasks' in his RFC assessment and questioning of the vocational expert." (T124; 97-98). "This lack of meaningful discussion is particularly troubling because the medical evidence of record supports Plaintiff's attention and concentration problems are much more limiting." (ECF No. 14 at 16). Plaintiff references Dr. Linehan, a consultative examiner hired by the Commissioner, who Plaintiff argues found Plaintiff's mental health issues to be so severe at the time of examination that he concluded Plaintiff was "functioning within the very low borderline range…of cognitive abilities." (T714). Dr. Linehan ultimately concluded Plaintiff was not competent to manage her own money and required a payee. (T714). (ECF No. 14 at 17).

Plaintiff further references two state agency psychologists employed by the Defendant, Dr. Biscardi and Dr. Sandovnik, who Plaintiff contends found Plaintiff moderately limited in her ability to concentrate, persist, and keep pace and adapt or manage herself. (*Id.* at 17-18). Plaintiff also contends that both doctors went further than the ALJ did in his RFC assessment, and neither of them had any of Plaintiff's psychological treatment records from 2016 to 2020, when the decision was issued, and were not aware of the Plaintiff's psychiatrist's mental capacity assessment at the time they offered their opinions. (*Id.*). Dr. Biscardi wrote the following Mental

12

Residual Functional Capacity Assessment or MRFC:

> Clmt (sic) retains the capacity to understand, remember, and carry out and sustain performance of 1-2 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact briefly/superficially with coworkers/supervisors with no public contact, and adapt to changes/stressors associated with simple routine competitive work activities. (T177).

Plaintiff asserts that the ALJ clearly deviated from Dr. Biscardi's findings by "equating one to step tasks" with "simple and routine" without explaining how or why they are one in the same. Additionally, Plaintiff asserts that the ALJ omits any reference to Plaintiff becoming "overwhelmed" to more complicated procedures from his discussion altogether. This also goes to the heart of the issue of concentrating, persisting, and keeping pace and to the issue of adapting and managing oneself. *See Ramirez v. Barnhart,* 372 F.3d 546, 552 (3d Cir. 2004).

Plaintiff contends that Dr. Sandovnik's findings contain moderate limitations across several different domains and cites the following:

> Claimant is able to carry out *very* short and simple instructions but has moderate limitations in carrying out detailed instructions. She demonstrates moderate limited ability in maintaining attention and concentration for extended periods. She demonstrates a moderate limited ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. (sic) Clmt has moderate limitations in her ability to maintain a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. (T141)(emphasis added).

Plaintiff points out that neither of these psychologists had the benefit of reviewing any of Plaintiff's mental health treatment notes at the time that they offered these opinions. Further, Plaintiff only started ongoing mental health treatment in December 2017, and those records were not a part of the record. Plaintiff further contends that despite the lack of medical records, all these medical opinions are more limiting than the ALJ's ultimate findings. (ECF No. 14 at 18).

Plaintiff, citing to the ALJ's decision found fault with the ALJ's handling of Plaintiff's

13

social limitations. The ALJ writes:

> In interacting with others, the claimant has a moderate limitation. When the claimant completed the function report, she reported her impairments impacted her ability to get along with others. A review of the medical evidence of record confirmed a history of depressive disorder and anxiety disorder. Mental status examinations of the claimant revealed the claimant's mood and affect were euthymic. However, they generally revealed that she was in no acute distress or no apparent distress and had appropriate mood and affect when she presented for evaluations. (T20) (citations omitted).

Plaintiff contends that the ALJ's assessment is belied by the record as Plaintiff displayed socially inappropriate interactions, or remarkable mood or effect on numerous occasions with her mental health providers (T714; 744; 896; 900; 898; 1611; 1608; 1606). Plaintiff asserts that the ALJ offers no explanation as to how his finding of moderate limitations in social functioning equate to his ultimate findings that Plaintiff can occasionally have contact with supervisors, co-workers and the public (T21). According to Plaintiff, this deficiency in the ALJ's decision is highlighted by Dr. Sandovnik's finding of moderate limited ability to even "interact appropriately with the general public" at all (T141), and Dr. Biscardi's further finding that Plaintiff could only briefly and superficially interact with coworkers and supervisors and should have no public contact at all (T177). Plaintiff asserts that the ALJ offers no logical bridge connecting these inconsistent findings and for that reason the decision should be reversed and remanded for further consideration (ECF No. 14 at 19).

Defendant counters that the ALJ found at step three, by use of the psychiatric review technique form (PRTF), consistent with the state agency psychologists' findings, that Plaintiff had "moderate" limitations in the areas of concentration, persistence, or maintaining pace; adapting or managing oneself; and interacting with others (Tr. 20, 137-42, 173-77). Defendant asserts the limitations identified in the PRTF are not a residual functional capacity assessment; rather, they are used to rate the several of mental impairment(s) at steps two and three of the sequential evaluation

14

process. *Social Security Ruling* (*SSR*) 96-8p (Assessing Residual Functional Capacity in Initial Claims), 1996 WL 374184, *4. The mental residual functional capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories summarized in the PRTF. *Id.*

Defendant further asserts that the ALJ explained in the decision that, while a review of the medical evidence of record confirmed a history of depressive disorder and anxiety (panic disorder), examining sources' mental status examinations of the claimant failed to reveal the type of significant abnormalities one would expect if Plaintiff were in fact disabled from all manner of work due to her diagnosed mental impairments (Tr. 32). (ECF No. 16 at 16).

As the ALJ also discussed, treatment notes from Plaintiff's primary care physician throughout the relevant period repeatedly shows no psychiatric abnormalities (including repeated findings of socially appropriate behavior) (Tr. 38; *see, e.g.,* Tr. 1087-1109). Furthermore, Plaintiff's treatment for her mental complaints was conservative in nature, consisting of sporadic counseling and medication management.

In addition, Defendant contends that Plaintiff's full round of daily activities are inconsistent with her complaint that she is mentally precluded from all work. For instance, Plaintiff told Dr. Linehan that her daily activities include getting up at about 6:00 a.m.; waking up her eleven-year-old son, getting him ready for school, and taking him to school; watching television; "think[ing] a lot" during the day; picking her son up from school; talking with him about school and helping him do his homework; and getting him ready for bed (Tr. 713-14). She can cook independently and do her laundry (Tr. 713-14).

The ALJ adopted the state agency psychologists' PRTF ratings, i.e., that Plaintiff had "moderate" limitations in the areas of concentration, persistence, or maintaining pace; adapting or

managing oneself; and interacting with others (Tr. 20, 137-42, 173-77). However, also consistent with the state agency psychologists' findings, the ALJ ultimately determined that, despite the moderate ratings, Plaintiff still had the mental residual functional capacity to perform simple, routine tasks, and this finding is supported by the record, discussed above (Tr. 21, 137-42, 173-77).

In support of her argument that the ALJ's mental residual functional capacity assessment should have been more restrictive, Plaintiff cites to Psychologist Linehan's report (Pl.'s Br. at 17). However, the state agency psychologists specifically considered Psychologist Linehan's report and both found that Plaintiff could perform simple, routine tasks (Tr. 137-42, 173-77). In addition, Psychologist Linehan's report does not amount to a "medical opinion" as defined in the governing regulations, because it does not set forth any specific work-related mental abilities and limitations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) ("[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions"). Thus, Psychologist Linehan's report does not advance Plaintiff's claim.

Plaintiff also argues that the state agency psychologists did not have access to all the evidence (Pl.'s Br. at 18). The Third Circuit rejected a similar argument in *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011). In *Chandler*, the Court of Appeals recognized that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ's hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Id.* at 361. And as previously discussed, the record shows that, throughout the relevant period (even after the state agency psychologists' review), Plaintiff's mental status examinations were repeatedly found

16

to be normal (Tr. 1087-1109). Further, Plaintiff consistently and repeatedly denied any anxiety, depression, or panic attacks to her primary care provider (Tr. 1087-1109).

The ALJ accounted for Plaintiff's mental work-related complaints by limiting her to simple and routine tasks with only occasional contact with supervisors, co-workers, and the public, along with physical restrictions (Tr. 97). The vocational expert was able to identify representative work Plaintiff could perform despite those limitations (Tr. 98). The ALJ's residual functional capacity assessment is also consistent with the state agency psychologists' finding that Plaintiff could perform simple, routine tasks. Second, the ALJ's residual functional capacity assessment was not based on their opinions alone.

While Psychologist Biscardi determined that Plaintiff could interact briefly/superficially with coworkers/supervisors and have no public contact, and the ALJ's hypothetical question to the vocational expert was for occasional contact with supervisors, co-workers, and the public, this was at most harmless error (Tr. 97, 173-77). The ALJ limited Plaintiff to simple, routine tasks and found that Plaintiff could perform unskilled jobs (Tr. 21, 43). Unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people," *SSR* 85-15 (Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments), 1985 WL 56857.

Moreover, the descriptions within the *Dictionary of Occupational* Titles (DOT) for all three representative occupations the vocational expert identified rate the "People" function level at 8, or that "Taking Instructions—Helping" is "Not Significant." *See* mail clerk, DOT #209.687-026, 1991 WL 671183; electronics worker, DOT #726.687-010, 1991 WL 679633; and assembler, DOT #706.684-022, 1991 WL 679050 (Tr. 98). This is the "lowest possible level of human interaction that exists in the labor force[.]" *Donathan v. Berryhill*, No. 17-821, 2018 WL 3014828,

17

at *4 n.5 (M.D.N.C. June 15, 2018). "If work that you can do does exist in the national economy, [the ALJ] will determine that you are not disabled." *See* 20 C.F.R. §§ 404.1566(b), 416.966(b).

Notably, for all three jobs named, the DOT describes the ability to talk as "Not Present – Activity or condition does not exist." *See* mail clerk, DOT #209.687-026, 1991 WL 671183; electronics worker, DOT #726.687-010, 1991 WL 679633; and assembler, DOT #706.684-022, 1991 WL 679050. The vocational expert testified that none of the jobs named require the ability to speak English (Tr. 98).

Thus, the ALJ's capacity assessment is supported in the record.

      **B.**    **The ALJ Applied Correct Legal Standards in Evaluating the Medical Opinions of Drs. Jessy Sadovnik and David Biscardi**

20 C.F.R. § 404.1520c provides specific rules pertaining to the evaluation of medical opinion evidence in a Social Security disability claim. The regulations provide that an ALJ is required to consider all the medical opinions when weighing the evidence and articulate their persuasiveness. *Id.* at (b). The ALJ is required to consider factors including supportability, consistency, relationship with the claimant, and specialization. *Id.* at (c)(1)-(5). Social Security Ruling 96-8p provides: "[t]he RFC assessment must always consider and address medical opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 3.

The Third Circuit has held that the ALJ must evaluate all record evidence when making a disability determination. *Plummer,* 186 F.3d at 433. The resulting decision must include a "clear and satisfactory explication of the basis on which it rests," which is sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter v. Harris,* 642 F.2d 700, 704-05 (3d Cir. 1981). The ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, if any, and explain why the ALJ accepted certain evidence but rejected other

18

evidence. *Id.* at 705-06. Without such explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. Plaintiff contends that the ALJ failed in these legal requirements when weighing and explaining how persuasive he found the medical opinions of state agency psychologists Dr. Jessy Sadovnik and Dr. David Biscardi.

Plaintiff asserts that the ALJ's RFC findings do not "match up" to the medical conclusions of these psychologists and that the ALJ offers no explanation for the opinions' persuasiveness while omitting significant limitations from the RFC assessment. (ECF No. 14 at 20). Dr. Biscardi found that Plaintiff would be overwhelmed with any procedures more complicated than one to two step tasks, and that Plaintiff should have no contact with the public, and only brief or superficial interactions with coworkers and supervisors. (T177). Plaintiff argues that the ALJ finds this opinion to be 'persuasive' but then fails to provide any discussion as to why he did not include all of Dr. Biscardi's limitations in Plaintiff's RFC. (T41-42). Plaintiff similarly contends that the same issue applies to Dr. Sadovnik who concluded Plaintiff would have a moderately limited ability to interact appropriately with the public. (T141). Plaintiff asserts that any inappropriate interactions by an employee with the public would undermine the ALJ's finding that Plaintiff can work in the national economy.

Plaintiff asserts that because both doctors are experts in Social Security disability programs (SSR 96-6p, 1996 SSR LEXIS 3) "[a]n ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.,* 57 F.App'x 976, 979 (3d Cir. 2003) (citation omitted). Plaintiff further asserts that the ALJ cannot state he is finding the medical opinions to be 'persuasive' and then omit substantial portions of the medical opinions that detract from the ALJ's findings without further explanation. (ECF No. 14 at 20-21).

To summarize, the ALJ's residual functional capacity assessment is wholly consistent with

the state agency psychologists' finding that Plaintiff could perform simple, routine tasks. The ALJ's residual functional capacity assessment was not based on Dr. Savodnik's and Dr. Biscardi's opinions alone. The ALJ's hypothetical question to the vocational expert for occasional contact with supervisors, co-workers, and the public, was at most harmless error considering Dr. Biscardi's determination that Plaintiff could interact briefly/superficially with coworkers/supervisors and have no public contact (Tr. 97, 173-77). The ALJ limited Plaintiff to simple, routine tasks and found Plaintiff could perform unskilled jobs. Significantly, for all three of the jobs named, the DOT describes the ability to talk as "Not Present – Activity or condition does not exist." *See* mail clerk, DOT #209.687-026, 1991 WL 671183; electronics worker, DOT #726.687-010, 1991 WL 679633; and assembler, DOT #706.684-022, 1991 WL 679050. Moreover, the vocational expert specifically testified that none of the jobs named even require the ability to speak English (Tr. 98).

Thus, the Court finds that the ALJ properly analyzed Torres' claim, and the psychologists' opinions, and the ALJ's findings are supported by substantial evidence.

### V.     CONCLUSION

For the forgoing reasons, the Court **AFFIRMS** the Commissioner's decision. An appropriate Order accompanies this Opinion.

Date:  October 19, 2023                s/ Julien Xavier Neals
                                                  **JULIEN XAVIER NEALS**
                                                  **UNITED STATES DISTRICT JUDGE**